UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT WILLIAMS, *et al.*,

    Plaintiffs,

    v.

MIKE JOHANNS, *et al.*,

    Defendants.

Civil Action No. 03-2245 (CKK)

MEMORANDUM OPINION
(October 24, 2005)

This case originally presented the question of whether Defendants violated the Equal Credit Opportunity Act ("ECOA") and the Fifth Amendment in the settlement of a 2002 discrimination claim by Plaintiffs and in the denial of Plaintiffs' 2003 application for a farm loan from the United States Department of Agriculture ("USDA"). In an order and accompanying memorandum opinion dated July 5, 2005, the Court granted [16] Defendants' Renewed Motion to Dismiss Plaintiffs' ECOA claim related to the 2002 discrimination settlement and Plaintiffs' Fifth Amendment claims related to both the 2002 settlement and the 2003 farm loan application.[1] The Court is presently ruling on Plaintiffs' [36] Motion to Reinstate and Transfer Contract Claim to the US Court of Claims and for Reconsideration of Dismissal of Constitution [sic] Claim Against Individual Defendants ("Motion to Reconsider"). After consideration of Plaintiffs' Motion to Reconsider, [39] Defendants' Memorandum in Opposition to Plaintiffs' "Motion to Reinstate and Transfer Contract Claim to the US Court of Claims and for Reconsideration of Dismissal of

---

[1] The Defendants did not move to dismiss (nor did the Court grant a dismissal of) Plaintiffs' ECOA claim related to the 2003 farm loan application, which is scheduled for mediation before Magistrate Judge John M. Facciola on November 3, 2005.

Constitution [SIC] Claim Against Individual Defendants" ("Opposition"), [40] Plaintiff's [sic] Reply Brief to Defendants' Memorandum in Opposition to Motion to Reinstate and Transfer Contract Claim to the US Court of Claims and for Reconsideration of Dismissal of Constitution [SIC] Claim Against Individual Defendants ("Reply"), [27] Plaintiffs' First Amended Complaint ["Am. Compl."], and the relevant case law, the Court hereby orders that Plaintiffs' Motion to Reconsider be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Robert and Laverne Williams are African-American farmers who operate a small farm in Roscoe, Texas. Am. Compl. ¶ 11. Plaintiffs brought an action against the Secretary of the USDA in his official capacity,[2] as well as Frederick Isler and Clyde Thompson, in both their official capacities as agents of the USDA and in their individual capacities, alleging discrimination in violation of the Fifth Amendment and ECOA, 15. U.S.C. § 1691.

Plaintiffs had applied to the Farm Service Agency ("FSA") for a loan to operate their farm in January 2002. Am. Compl. ¶ 15. In May 2002, Plaintiffs filed a discrimination complaint with the USDA's Office of Civil Rights ("OCR"), alleging discrimination by the USDA in the processing of their loan. Am. Compl. ¶ 20. During a meeting at Plaintiffs' home with Defendants Isler and Thompson (which Plaintiffs' attorney did not attend), Plaintiffs settled their discrimination complaint via an agreement that they ultimately signed on August 13, 2002. Am. Compl. ¶¶ 22, 23. This settlement agreement discharged Plaintiffs of all debt owed to the FSA and provided Plaintiffs with $25,000 in compensatory damages and additional compensation for attorney's fees. 2002 Settlement Agreement ¶¶ 1-3. By signing the agreement, Plaintiffs agreed to withdraw their

---

[2] While Plaintiffs originally named Ann Veneman as a Defendant in her official capacity as then-Secretary of the USDA, she has been replaced in this action by present Secretary of the USDA Mike Johanns.

discrimination complaint. *Id*. ¶ 4. Plaintiffs also agreed to accept the settlement agreement as "a full, final and complete settlement" of all claims that they might have against the USDA "based on facts occurring prior to the date of [the] agreement." *Id*. ¶ 5. After Plaintiffs' application to the FSA for another farm operation loan in 2003 was denied, Plaintiffs filed an administrative complaint with the OCR alleging discrimination on the basis of race in the FSA's denial of their 2003 loan application. Am. Compl. ¶¶ 28-29.

Plaintiffs had alleged in their complaint that they were coerced into terminating their attorney and agreeing to the 2002 Settlement Agreement, which, according to Plaintiffs, undervalued Plaintiffs' 2002 discrimination claim. Am. Compl. ¶ 23. Plaintiffs had also alleged that race discrimination was the cause of the FSA's denial of their 2003 loan application. Am. Compl. ¶ 29. Plaintiffs alleged that both the settlement agreement and the denial of their 2003 loan constituted violations of their Fifth Amendment rights and their rights under the ECOA, which prohibits discriminatory conduct on the basis of race. Am. Compl. ¶¶ 34, 39, and 40.

Defendants filed their [16] Renewed Motion to Dismiss on April 30, 2004, requesting that the Court dismiss both of Plaintiffs' Fifth Amendment claims and Plaintiffs' ECOA claim related to the 2002 Settlement Agreement. After considering Defendants' Renewed Motion to Dismiss as well as [18] Plaintiffs' Opposition and [19] Defendants' Reply to said motion, the Court granted Defendants' motion in its [28] Order and accompanying [29] Memorandum Opinion dated July 20, 2005. Therefore, as the Court granted the dismissal, the only claim that presently remains is Plaintiffs' claim that the FSA's denial of their loan application in 2003 violated the ECOA.

Plaintiffs filed the instant motion requesting that the Court reinstate and transfer the dismissed ECOA-based discrimination claim related to the 2002 Settlement Agreement to the U.S. Court of Claims as applied to all Defendants and additionally that the Court reconsider Plaintiffs'

dismissed Fifth Amendment claims related to both the 2002 Settlement Agreement and the denial of Plaintiffs' 2003 loan application as applied to Defendants Isler and Thompson in their individual capacities.

## II. LEGAL STANDARD

While Plaintiffs' did not cite any legal standard under which they brought their motion to reconsider, Defendants' correctly cite to Rule 54(b) of the Federal Rules of Civil Procedure in their Opposition (which Plaintiffs agree to in their Reply) as the appropriate basis under which a party can bring a motion to reconsider dismissed claims when fewer than all claims in an action have been dismissed.

Under Rule 54(b), when more than one claim is presented to the Court,

> the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Accordingly, without express direction for the entry of judgment on particular claims under Rule 54(b), court action which terminates fewer than all claims in a case is considered an interlocutory rather than a final decision and subject to revision at any time. *See also Hill v. Henderson*, 195 F.3d 671, 672 (D.C. Cir. 1999) (holding that a district court order dismissing one of several claims without making an explicit determination under Rule 54(b) is not a final decision subject to appellate review); *Lewis v. United States*, 290 F. Supp. 2d 1, 3 (D.C.C. 2003) (stating that a motion to reconsider dismissal of claims related to one of two parties was properly brought under Rule 54(b) rather than Rule 60). In the instant case, the Court's order granting Defendants' Motion to Dismiss adjudicated fewer than all of the claims in the case, as Plaintiffs ECOA-based

4

discrimination claim pertaining to the 2003 loan application remains because it was not addressed in the Motion to Dismiss. Thus Plaintiffs' Motion to Reconsider would have been properly brought under Rule 54(b).

The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b): "Unlike Rule 60(b) which contains a reasonableness provision, Rule 54(b) allows a court to reconsider its interlocutory decisions 'at any time' prior to a final judgment." *Lewis*, 290 F. Supp. 2d at 3 (quoting Rule 54(b)). The standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the "as justice requires" standard espoused in *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.C.C. 2005), which requires "determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id. See also Singh v. George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Considerations a court may take into account under the "as justice requires" standard include whether the court "patently" misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred. *See Singh,* 383 F. Supp. 2d at 101. Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider: "In order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Cobell*, 355 F. Supp. 2d at 540.

*Cobell* also suggests that even if justice does not "require" reconsideration of an interlocutory ruling, a decision to reconsider is nonetheless within the court's discretion: "[E]ven if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may

nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *Id*. at 540.  However, the efficient administration of justice requires that a court at very least have good reason to reconsider an issue which has already been litigated by the parties:  " 'The district court's discretion to reconsider a non-final ruling is, however, limited by the law of the case doctrine and "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."' " *Singh*, 383 F. Supp. 2d at 101 (quoting *In re Ski Train Fire in Kaprun, Austria, on November 11, 2004*, 224 F.R.D. 543, 546 (S.D. N.Y. 2004) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003))).  Thus if the court chooses to reconsider a motion even if justice does not so require, there must be a "good reason" underlying the parties' re-addressing an already decided issue.

## III.  DISCUSSION

In their motion to reconsider, Plaintiffs request that the Court reinstate and transfer Plaintiffs' ECOA claim relating to the 2002 Settlement Agreement to the U.S. Court of Claims. Plaintiffs also request that the Court reconsider Plaintiffs' Fifth Amendment claims against Defendants Frederick Isler and Clyde Thompson in their individual capacities.  The Court will analyze both of these requests in turn.

### *A.  ECOA Claim*

In order to grant Plaintiffs' motion to reconsider their ECOA claim related to the 2002 Settlement Agreement to reinstate and ultimately transfer the claim to the U.S. Court of Claims, the Court should determine whether reconsideration of this issue is necessary to preclude some harm to Plaintiffs.  At very least, the Court must determine that there is a good reason to reconsider the issue by reinstating and transferring the claim.

However, Plaintiffs have not demonstrated that the Court's reinstatement and transfer of this claim to the Court of Appeals is in the interest of justice; they do not give any reason as to what harm Plaintiffs would suffer by bringing their dismissed ECOA claim directly to the U.S. Court of Claims. In dramatic fashion, Plaintiffs allege that "[s]hould the Court not reinstate and transfer the contract claim to the US Court of Claims, the Plaintiffs, [sic] will suffer further economic injury and swift justice will not be accomplished." Motion to Reconsider at 2. However, nowhere in their Motion to Reconsider or in their Reply do the Plaintiffs make any argument as to why they are either unable to bring the ECOA claim before the US Court of Claims themselves or what disadvantage would accompany their directly presenting the ECOA claim to the US Court of Claims.

Nor do Plaintiffs even provide a good reason for the Court to reinstate and transfer Plaintiffs' dismissed contract claim. Citing Judge Rosemary M. Collyer's January 24, 2005 memorandum opinion in *Stovall v. Veneman* (04-cv-319)*,* Plaintiffs merely point out that another judge in this District transferred a claim to the U.S. Court of Claims and suggest that the Court in this case should follow suit because it is "practice" in the D.C. District Court. Motion to Reconsider at 7; Reply at 6-8. However, even noting the obvious fact that one case does not define a "practice" in a particular district, Plaintiffs fail to distinguish that in *Stovall,* Judge Collyer's transfer was effectuated in response to a motion to dismiss[3] (not on a motion to reconsider) because ancillary jurisdiction over the greater than $10,000 contract claim was lacking. *See id*. at 8-9. Plaintiffs state in their Reply that while "transfer of a case from the District Court to the Court of Claims does not confer jurisdiction in any particular matter on the Court of Claims," transfer would "express the D.C. District Court's recognition that certain claims belong in the Court of Claims rather than in the

---

[3] It should be noted that in [18] Plaintiffs' Opposition to Defendants' Renewed Motion to Dismiss, Plaintiffs never raised as an alternative transferring their contract claims to the U.S. Court of Claims, which the Court might have considered at that time.

District Court." Reply at 7. Since the Tucker Act, 28 U.S.C. § 1346(a)(2), itself recognizes this distinction by explicitly stating that district courts share original jurisdiction with the Court of Federal Claims only over claims under $10,000, the Court finds that there is no good reason to reinforce existing statutory law via an "expression."

Accordingly, the Court denies Plaintiffs' request to reinstate and transfer their dismissed ECOA claim to the U.S. Court of Claims.

### B. *Fifth Amendment Claims Against Defendants Isler and Thompson in their Individual Capacities*

The Court also finds that Plaintiffs neither demonstrate that reconsideration of their Fifth Amendment claims against Defendants Isler and Thompson in their individual capacities is in the interest of justice nor provide a good reason for reconsidering such claims. Plaintiffs provide few new arguments in their Motion to Reconsider, largely relying on block quotes from their Opposition to Defendants' Motion to Dismiss which purport to show why consideration of their Fifth Amendment claims are in the interest of justice. The Court finds Plaintiffs' use of nearly three pages of single-spaced, ten-point font block quotes of arguments that the Court already determined to be without merit as a waste of the Court's time in light of the fact that the Court explicitly stated in its [35] Scheduling and Procedures Order, filed July 20, 2005, that the Court would not entertain "motions which simply reassert arguments previously raised and rejected by the court." Scheduling and Procedures Order at 5.

The Court also finds that the few new issues that Plaintiffs do raise in their Motion to Reconsider are without merit. Plaintiffs allege that "But for the Defendants' continued discrimination, misrepresentation, coercion, inducement and fraud in the formation of the 2003 settlement, Plaintiffs would have been in a financial position to operate their farm without the loans

and programs offered by Defendants." Motion to Reconsider at 14. However, Defendants neither clarify how the 2002 Settlement Agreement, which absolved Plaintiffs of approximately $400,000 in federal loan debt, could possibly have put Plaintiffs into a worse financial position than had such agreement not been reached. Nor should Plaintiffs raise this argument for the first time in their Motion to Reconsider, as such an argument involves factual allegations that could have been proffered at the time that Plaintiffs initiated their complaint.

Plaintiffs also claim that the 2002 Settlement Agreement "pales in comparison" to the monetary and injunctive relief awarded to black farmers in a number of cases cited by Plaintiffs. Motion to Reconsider at 14. The Court specifically indicated in its Scheduling and Procedures Order that the Court would not entertain "arguments which should have been previously raised, but are being raised for the first time in the 'Motion for Reconsideration.'" Scheduling and Procedures Order at 5-6. It should be noted that all of the cases cited were adjudicated prior to Plaintiffs' initiation of this lawsuit and could have been included in Plaintiffs' Complaint or to refute Defendants' Motion to Dismiss. Furthermore, the fact that some cases raising purportedly similar claims to Plaintiffs' claims settled for larger sums of compensatory damages and injunctive relief does not create a "clear inference" that "something went awry," as Plaintiffs suggest. Motion to Reconsider at 15. First of all, the first case cited by Plaintiffs for this proposition, *Pigford v. Veneman*, 206 F.3d 121 (D.D.C 2000), involved an approximately $2 billion settlement of combined debt relief and monetary payments for a class of approximately 20,000 black farmers. Thus, the *Pigford* settlement granted each farmer an average of approximately $100,000 of combined debt relief and monetary payments; the combined debt relief and monetary payments provided to Plaintiffs, however, totaled well over $400,000. Additionally, settlement negotiations on similar claims need not produce identical kinds or amounts of relief.

The Court will address Plaintiffs' argument that "Plaintiffs Will Face Harsh Sanction Unless Court Provides Relief"[4] in short shrift, as Defendants' Motion to Dismiss was granted on the merits, and not as a sanction against Plaintiffs for some procedural misstep or as a deterrent.

Finally, Plaintiffs' argument that granting a motion to reconsider will not cause irreparable injury to Defendants has no bearing on whether or not reconsideration of Plaintiffs' constitutional claims is necessary to prevent harm to <u>Plaintiffs</u>, nor is it a "good reason" to grant a motion to consider as it does not help Plaintiffs demonstrate why the Court should once again hear Plaintiffs' claims.

## IV.  CONCLUSION

After considering the parties' briefs and the relevant law, the Court finds that Plaintiffs have not demonstrated that justice requires, nor presented any "good reason," for reinstatement and transfer of Plaintiffs' ECOA-based discrimination claim to the U.S. Court of Claims or reconsideration of Plaintiffs' constitutional claims.  Therefore, the Court hereby denies [36] Plaintiffs' Motion to Reinstate and Transfer Contract Claim to the US Court of Claims and for Reconsideration of Dismissal of Constitution [sic] Claim Against Individual Defendants.  An appropriate Order accompanies this Memorandum Opinion.

Date:   October 24, 2005

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[4] Motion to Reconsider at 15.