# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                )
ROBERT WILLIAMS, *et al.,*       )
                                )
          Plaintiffs,            )
                                )
     v.                          )          Civil Action No. 03-2245 (CKK/JMF)
                                )
MIKE JOHANNS, *et al.,*          )
                                )
          Defendants.            )
—————————————————————            )

## MEMORANDUM OPINION

This case was referred to me for resolution of discovery disputes. Currently pending

before me are four motions, including <u>Defendants' Second Motion to Compel</u> [#74] ("Second

Motion to Compel"), <u>Defendant's Motion for an Independent Medical Examination[1] of Plaintiffs,

and for an Extension of Certain Deadlines</u> [#78] ("Motion for IME"), <u>Plaintiff's Motion to

Amend Scheduling Order</u> [#82] ("Motion to Amend"), and plaintiffs' <u>Emergency Motion to

Quash Depositions</u> [#87] ("Motion to Quash"). Also outstanding is a request for attorneys' fees

owed by plaintiff relating to defendants' first Motion to Compel [#58]. <u>See</u> Minute Order, May

15, 2006. For the reasons stated herein, defendants' Motion to Compel will be granted;

defendants' Motion for IME will be granted in part and denied in part; plaintiffs' Motion to

Amend will be granted in part and denied in part; and plaintiffs' Motion to Quash will be denied

as moot. Plaintiffs' counsel will also be ordered to pay attorneys' fees relating to defendant's

first Motion to Compel in the amount of $2,186.54.[2]

———————————————————

[1] "Independent Medical Examination" is hereinafter "IME."

[2] The total amount is reached by multiplying the hourly rate of pay for a GS-13, step 1,
attorney with the Civil Division of the Department of Justice, or $37.06, by 59, which includes

## I.      BACKGROUND

Plaintiffs Robert and Laverne Williams (collectively "plaintiffs") initially brought this lawsuit against the United States, the Secretary of the United States Department of Agriculture ("USDA"), the USDA's Deputy Assistant Secretary for Civil Rights, and the USDA's Deputy Director of the Office of Civil Rights alleging denial of due process and equal protection in violation of the Fifth Amendment and denial of their USDA loan application based on their race (African American) in violation of the Equal Credit Opportunity Act of 1972 ("ECOA"), 15 U.S.C. § 1691 *et seq.*[3] Plaintiffs' First Amended Complaint ("Am. Compl.") ¶¶ 32-41.  On April 30, 2004, defendants filed a motion to dismiss.  On July 5, 2005, defendants' motion was granted and, as a result, plaintiffs' only remaining claim is that the denial of their 2003 application for a Farm Service Agency ("FSA") loan was in violation of the ECOA.  Williams v. Veneman, C.A. No. 03-2245 (D.D.C. July 5, 2005) (order granting motion to dismiss).

On September 23, 2005, defendants served their first set of interrogatories and requests for production of documents on plaintiffs.  See Williams v. Veneman, 235 F.R.D 116, 117 (D.D.C. 2006).  Plaintiffs provided their responses to defendants' discovery requests on February 16, 2006. Id.  After reviewing plaintiffs' responses, defendants informed plaintiffs that the responses were inadequate and, on March 6, 2006, plaintiffs provided revised responses. Id.  The revised responses, however, were also inadequate and, therefore, on March 21, 2006, defendants filed their first Motion to Compel [#58].  Shortly thereafter, on March 23, 2003, Judge Kollar-

---

the 13 hours spent by the government trying to avoid the need to file a second motion to compel and the 46 hours spent actually preparing defendants' second motion to compel, memorandum in support, and reply memorandum.  See Notice of Filing [#76].

[3] Citation is to the electronic version available through Westlaw or Lexis.

Kotelly granted defendants' unopposed motion to extend the deadline for discovery from July 19,

2006, to September 20, 2006.  On April 27, 2006, I issued an Order with a Memorandum

Opinion granting plaintiffs' first Motion to Compel.  Id.  Following plaintiffs' submission of

supplemental discovery responses to defendants in an effort to comply with court orders,

defendants filed their <u>Second Motion to Compel</u> currently at issue on May 12, 2006.  On July 5,

2006, defendants filed their Motion for IME, which included: (1) a request for an order directing

plaintiffs to submit to a medical examination pursuant to Rule 35, and (2) a request to extend the

deadline for defendants to serve the independent medical examiner's report.  Motion for IME at

1.  On July 27, 2006, plaintiffs filed a Motion to Amend the discovery schedule to extend all

deadlines by 90 days.  Following the filing of plaintiffs' <u>Emergency Motion to Quash</u>

<u>Depositions</u> on August 21, 2006, this Court entered a stay of all discovery on August 24, 2006.

## II.    DISCUSSION

### A.    Defendant's Second Motion To Compel

#### 1.    *Federal Rules Regarding Discovery*

As this Court previously stated, under Rule 33 of the Federal Rules of Civil Procedure,

plaintiffs are required to answer each interrogatory "separately and **fully in writing under oath**,

unless it is objected to, in which event the objecting party shall state the reasons for objection and

shall answer to the extent the interrogatory is not objectionable." FED. R. CIV. P. 33(b)(1)

(emphasis added).  Similarly, in response to requests for documents under Rule 34, plaintiffs

must "state, with respect to each item or category, that inspection and related activities will be

permitted as requested, unless the request is objected to, in which event the reasons for the

objection shall be stated" and "inspection permitted for the remaining parts." FED. R. CIV. P.

34(b).  As has already been the case here, if the requesting party has to resort to filing a motion to

compel in order to obtain the requested information, the responding party may be ordered to

reimburse the moving party for the expenses incurred in bringing the motion to compel,

including reasonable attorney's fees. FED. R. CIV. P. 37(a)(4)(A).  In addition, Rule 37 permits

the court to impose further sanctions when a party refuses to obey a discovery order.  FED. R.

CIV. P. 37(b)(2).

2.     *Plaintiffs' Discovery Responses*

Plaintiff has been sanctioned once already in this case for failing to respond adequately to

discovery requests.  See Williams v. Veneman, 235 F.R.D. at 124; Minute Order, May 15, 2006.

Following the defendants' first Motion to Compel, this Court ordered plaintiffs to correct the

insufficiency of their discovery responses and specifically provided reasons why supplementation

was necessary.  Defendants now ask the Court again to compel discovery responses from

plaintiffs due to insufficient answers provided in response to this Court's Order.  See

Defendants' Memorandum in Support of Their Second Motion to Compel ("Defs. Mem. to

Compel").  Plaintiffs did not file any response or opposition to defendants' Second Motion to

Compel.

The following chart provides each of defendants' interrogatories at issue , plaintiffs'

interrogatory responses on which this Court based its previous ruling, and plaintiffs'

supplemental answers in response to that Order, provided to defendant on May 12, 2006.[4]

---

[4]  The information in this chart was obtained from Exhibit 2 of Defendants'
Memorandum in Support of Their Second Motion to Compel.

4

| Number | Interrogatory | Previous Answer (March 6, 2006) | Court's Ruling (April 27, 2006) | Supplemental Answer (May 8, 2006) |
|---|---|---|---|---|
| 1 | Identify persons with knowledge relevant to allegations relating to plaintiffs' 2003 farm operating loan application. State the facts of which each such person has information or knowledge. | "Plaintiff objects on the basis that said request is overly broad and vague." Names certain persons but does not provide the facts of which those persons have knowledge. | Insufficient; no facts provided in response to interrogatory. | Names 8 individuals, describes who each person is, and describes generally some facts of which each is aware, while referring to other facts "here-to-for not developed." Adds that this interrogatory "will be supplemented in accordance with rules." |
| 2 | State factual bases for contention that defendant violated the ECOA by denying 2003 farm operating loan application on basis of race and indicate date of each discriminatory incident and the discriminatory act performed by USDA employee claimed to be racially motivated. | "Plaintiff objects on the basis that said request is overly broad and vague." Repeats the allegations of the complaint. States: "See Original and Amended Complaint." | Allegations in complaint do not constitute answers to specific interrogatories posed. | References to complaint removed; three sentences added as to plaintiffs' travel to another county for service; unspecified allegations of Mr. Kalina and Mr. Cumbie contriving to find a way to deny the Williams's loan application; and the occurrence of these events between January and March 2003. |

| 3 | State whether plaintiffs contend that the *handling* of their 2003 loan application is an ECOA claim distinct from the *denial* of their 2003 farm operating loan. If so, state factual bases for that contention and identify discriminatory acts. | "Yes. See answer to Interrogatory Number 2." | Allegations in complaint do not constitute answers to specific interrogatories posed. | "Yes. See answer to Interrogatory Number 2."  Same as previous answer. |
| 4 | State whether plaintiffs contend that USDA violated the ECOA in handling of administrative complaint and state factual bases for that contention. | "Yes. See answer to Interrogatory Number 2. FSA has all such documents in its file." | Allegations in complaint do not constitute answers to specific interrogatories posed. Nor is it any answer to refer defendants to a "file." | "No."[5] |

---

[5] Defendants are not moving to compel any further response to Interrogatory No. 4. Defs. Mem. to Compel at 2.

| 5 | Describe facts relating to 2003 farm operating loan application; state factual bases for contention that plaintiffs were told to reapply. | "Yes. See Original and Amended Complaint and answer to Interrogatory Number 2. FSA has all such documents in its file." | Allegations in complaint do not constitute answers to specific interrogatories posed. Existence of file not an answer to an interrogatory. | Refers to loan file that is not in possession of plaintiffs. |
|---|---|---|---|---|
| 6 | State whether plaintiffs contend that their application was complete and established eligibility, whether plaintiffs have previously filed incomplete applications, and whether plaintiffs have discussed such applications with USDA. | "Yes. See Original and Amended Complaint as well as Office of Civil Rights Complaint file." | Allegations in complaint do not constitute answers to specific interrogatories posed. Nor is it any answer to refer defendants to a "file." | "Yes. According to Mr. Kalina, the farm and home plan cash-flowed up and until the second lien search was done." |

| 7 | State bases for contention that "rather than being permitted to amend this error" application was denied and state whether plaintiffs contend that they were entitled to or should have been permitted to amend the error. | "Yes. See Original and Amended Complaint and Office of Civil Rights file." | Allegations in complaint do not constitute answers to specific interrogatories posed. Nor is it any answer to refer defendants to a "file." | "The issue regarding the omission of the Key Brothers lien on this issue was left out of the initial loan application. Mr. Williams asked to include that information on a corrected application. His request was denied." |
| 8 | State name of every similarly situated white farmer whose application for a farm operating loan was treated more favorably than plaintiffs' application. | Provides two names and states: "All white farmers in Nolan County who use FSA services. FSA maintains all such files." | "Cavalier" response as to "border on the contumacious." | Provides two names and states: "All white farmers in Nolan County who use FSA services. FSA maintains all such files." Same as previous answer. |
| 9 | State whether plaintiffs administratively appealed the denial of their 2003 farm operating loan application. | "No appeal was made." | No ruling. | "No appeal was made." Same as previous answer.[6] |

---

[6] Defendants are not moving to compel any further response to Interrogatory No. 9. Defs. Mem. to Compel at 2.

| 10 | Identify each injury for which plaintiffs seek damages and the injuries underlying their contention of injury to business relations, credit reputation, and standing in the community. Specify dollar amount for each. | "Loss of all farm income for 2003 through present." | Insufficient. | List of dollar amounts of loan liabilities, lost income, and damages without any specification of how arrived at and with incorrect addition of figures. |
| --- | --- | --- | --- | --- |
| 11 | Describe financial status since denial of 2003 farm operating loan application. | "None." | "None" is not a legitimate answer. | States unspecified borrowing from friends and lists three First National Bank loans with their dollar amounts. |
| 12 | Describe treatment sought or obtained from any health care provider as a result of USDA's alleged violation of ECOA with respect to plaintiffs' 2003 farm operating loan application. | "Dr. Waymon Hinson. See production for complete report." | "Providing a psychological report concerning plaintiffs' mental health is not responsive," | "Dr. Waymon Hinson. See production for complete report." Same as previous answer. |

| 13 | Identify lay and expert witnesses. | "Will supplement." | Insufficient. | "Will supplement." Same as previous answer. |
|----|----|----|----|----|
| 14 | State bases for allegation that "by law, all [farm operating] loans are extended to first time and socially disadvantaged farmers, including black farmers . . . ." | "See 7 CFR." | Providing an incorrect reference to the Code of Federal Regulations does not respond to the request made. | "See 7 CFR." Same as previous answer. |
| 15 | Identify documents relied upon in responding to interrogatories or otherwise related to plaintiffs' allegations or damages claims with respect to their 2003 farm operating loan application. | "In responding to the Defendant's interrogatories, the Plaintiff's file was used." | Saying "Plaintiff's file was used" does not respond to the request made. | "In responding to the Defendant's interrogatories, the Plaintiff's file was used." Same as previous answer. |
| 16 | Identify persons contacted or involved in responding to interrogatories or solicited for information in support of lawsuit or who investigated any aspect of it. | "None." | Insufficient. Not reasonably possible. | "Our attorney." |

3.      *Plaintiffs' Supplemental Answers to Defendants' Interrogatories Are*
        *Insufficient and in Direct Violation of this Court's Order*

Plaintiffs' supplemental answers to defendants' interrogatories remain utterly deficient

and, more egregiously, directly violate the orders of this Court.  As described below, amended

answers that nonetheless remain deficient are ordered supplemented within ten days.  Answers

that violate orders of this Court are sanctioned accordingly.  Each is described in turn.

a.      Supplemented Answers Remain Inadequate.

Even where plaintiffs supplement their answers with additional "details," plaintiffs

continue to provide defendants with inadequate substantive information. In response to

Interrogatory No. 1, which asks plaintiffs to identify persons with relevant knowledge and to

state the facts of which those persons have knowledge, plaintiffs continue to state that additional

supplementation will be provided.  Though plaintiffs followed the Court's previous Order by

supplementing its answer with facts known, the statement that the interrogatory "will be

supplemented according to the rules" is an insufficient response. See Interrogatory No. 1; Answer

No. 1.[7]  Plaintiffs must fully respond to the interrogatory within ten days.

Plaintiffs' previous responses to Interrogatories 2 through 7 included references to the

complaint and to a "file."  While plaintiffs removed the references to the complaint in their

supplemental responses, the facts provided lack the substantive factual support and description

requested by the interrogatory.  In Interrogatory Nos. 2 and 3, the defendant requests the factual

bases for the contention that the defendant violated the ECOA by denying the plaintiffs' loan

---

[7]  Throughout this memorandum opinion, defendants' interrogatories will be cited to as
"Interrogatory No. ___" and plaintiffs' supplemented answers will be cited to as "Answer No.
___."

11

application in 2003 on the basis of race and to provide details of the alleged discriminatory acts,

as well as the bases for the contention that the handling of the ECOA loan constitutes a claim

distinct from the denial of the ECOA loan.  Interrogatory Nos. 2-3.  Plaintiffs add to the previous

deficient answers unspecified allegations that two individuals "specifically sought ways, the

second lien search to contrive a way to deny the loan, such actions being discriminatory because

no other white person were subjected to such extensive credit research" (sic).  Interrogatory

Answer No. 2.  This sentence is impossible to understand because of its poor grammar.

Additionally, the plaintiffs provide no description of the ways in which anyone sought to

"contrive a way to deny the loan."  Nor do the plaintiffs identify the white individuals who were

not subjected to "such extensive credit research."  Plaintiffs must fully supplement within ten

days their responses to Interrogatory Nos. 2 and 3 with descriptions of the way in which the two

named individuals contrived to deny plaintiffs the 2003 farm operating loan, what specific acts

the two individuals performed, and what specific white farmers were treated in a more favorable

manner than plaintiffs.

Defendants ask for plaintiffs' legal or factual support for particular, well-defined

contentions in Interrogatories Nos. 5 through 7.  In response to Interrogatory No. 5, despite this

Court's specific instruction in its previous Order that it is not "any answer, when asked for the

support for a *contention*, to refer defendants to a 'file,'" plaintiffs inexplicably refer defendants

again to a file–one that is not even in the possession of plaintiffs.  As previously stated: "Simply

noting the existence of a file is obviously not a sufficient answer.  Nor is the existence of a file an

answer to an interrogatory asking for the facts pertaining to plaintiffs' loan application." See

Williams v. Veneman, 235 F.R.D. at 123.  Nonetheless, plaintiffs respond to defendants' request

for legal and factual support for particular, well-defined contentions with "the loan file."  See Interrogatory No. 5; Answer No. 5.  Plaintiffs must provide a complete answer to Interrogatory No. 5 without any reference to a "file" within ten days.

The supplemental response to Interrogatory No. 6, "the farm and home plan cash-flowed up and until the second lien search was done," is similarly unresponsive to the request for legal and factual support for a contention posed by defendants.  Interrogatory No. 6; Answer No. 6. This answer is incoherent and meaningless.  Interrogatory No. 7 asks for legal and factual support regarding the contention that plaintiffs' loan application was denied rather than corrected. Though plaintiffs add a sentence in response to explain that Mr. Williams was denied the opportunity to include information on a lien left out of the previous loan application, the single sentence provided in the supplemented response fails to provide the legal basis for plaintiffs' claim.  Interrogatory No. 7; Answer No. 7.  Plaintiffs must provide complete answers to Interrogatories 6 and 7 within ten days.

Interrogatory No. 10 asks plaintiffs to identify each injury for which they seek damages relating to business relations, credit reputation, and their standing in the community, with specific dollar amounts for each injury.  The interrogatory further asks for "a detailed description of the manner in which you calculated your damages for each such injury, including all computations, formulas, and assumptions upon which you relied . . . ."  Interrogatory No. 10. Plaintiffs' response, albeit lengthy, consists of (1) a psychologist's report; (2) a list of farm liabilities plaintiffs assumed due to the alleged discrimination, with corresponding dollar amounts; (3) dollar amounts for past and future lost income, without any description of how such figures were derived; (4) a list of pecuniary losses (medical expenses, etc.) with dollar amounts;

and (5) a non-pecuniary dollar amount of $2,556,000, without any description of how such a figure was reached or how the amount is allotted to the nine categories of non-pecuniary damages listed. All figures provided are rounded to whole dollars. Interrogatory No. 10; Answer No. 10. The list of numbers does not include any description of formula or method used to determine the dollar amounts provided, nor is any supporting explanation provided for calculations of lost income or emotional harm. Furthermore, the dollar amounts listed are incorrectly added. Plaintiffs are ordered to provide the defendant with a complete explanation of formulas and calculations used to reach the amounts described in the interrogatory answer, as well as all supporting documentation and correct calculations, within ten days.

Interrogatory No. 11 asks plaintiffs to describe their financial status since the denial of the 2003 farm operating loan application. The interrogatory defines "financial status" to include, for example,

> the acquisition or leasing of any additional land, how much land, for what purpose and how it was paid for, the purchase or lease of any livestock, feed, equipment, or any structural improvements made to your farming or ranching operation, how much, for what purpose, and how it was paid for, . . . and applications for loans, the amount requested and received, if any, the reason for rejection, if any, the name of the lender, the type of loan, the terms of the loan agreement, and whether you are current or delinquent on such loan(s).

Interrogatory No. 11. In response, plaintiffs amended their original answer of "none" to state that plaintiffs have continued farming by "borrowing from friends," without listing any dollar amounts or names of these friends, and plaintiffs list three loans with First National Bank and their dollar amounts, two of which remain outstanding. Answer No. 11. By this response, plaintiffs indicate their "financial status" is one of outstanding debts to First National Bank in the

14

amount of $98,000 and an undisclosed amount of debt that may or may not remain outstanding to unnamed friends.  This is hardly a complete answer to the request and directly contradicts the lengthier list of farm liabilities provided in answer to Interrogatory No. 10.  Plaintiffs are ordered within ten days to supplement the explanation of their financial status since the denial of their loan application in 2003.

Finally, the most troubling amended supplemental response to defendants' interrogatories is that of Interrogatory No. 16, which asks plaintiffs to identify persons contacted or involved in responding to interrogatories, or solicited for information in support or investigation of the lawsuit.  Plaintiffs answer only with "Our attorney."  Interrogatory No. 16; Answer No. 16.  If this answer means that plaintiffs spoke only to their attorney and the attorney spoke to no one, then whether plaintiffs' counsel has complied with the reasonable inquiry requirement of 26(g) is an open and troubling question.  FED. R. CIV. P. 26(g).  Rule 26(g) requires the attorney responding to discovery requests to make a reasonable inquiry into the factual basis of his discovery response.  See Advisory Committee Note (1983) to FED. R. CIV. P. 26(g).  Plaintiffs must provide the information requested to defendants within ten days or explain to the Court the manner by which the inquiry of plaintiffs' counsel in responding to interrogatories satisfies the requirement of Rule 26(g).

> b.      Other Answers Violate Orders of This Court.

Even more disturbing than the deficiencies of the answers plaintiffs amended are the several interrogatory responses that directly violate this Court's Order to a degree that merits sanctions.  Rule 37(b) provides for sanctions where "a party fails to obey an order to provide or permit discovery," including but not limited to a court establishing certain facts as true, refusing

15

the disobedient party from supporting certain claims or defenses, striking pleadings, or dismissal

of the action.  FED. R. CIV. P. 37(b)(2).  Thus, failure to comply with a Rule 37(a) order may

justify the imposition of a broad range of sanctions.  See Monroe v. Ridley, 135 F.R.D. 1, 5

(D.D.C. 1990).  Indeed, in this case, plaintiffs have failed to comply with this Court's Order of

April 27, 2006.  In their response to the Court's order on defendant's first Motion to Compel,

plaintiffs have, on multiple occasions,  merely repeated the answer previously found

unacceptable by this Court.

Interrogatory No. 8 asks plaintiffs to identify similarly situated white farmers whose

applications for farm operating loans were treated more favorably.  Previously, this Court found

plaintiffs' answer, which includes "all white farmers in Nolan County who use FSA services,"

downright "cavalier."  Williams v. Veneman, 235 F.R.D. at 123.  As stated in my earlier opinion:

> the only white farmers who could possibly be similarly situated are those who applied for
> loans – not *all* white farmers who used any FSA services whatsoever.  Second, the only
> white farmers who are similarly situated and were treated more favorably than plaintiffs
> are those who had their loans approved; those who had their loans disapproved, like
> plaintiffs, were not treated any more favorably.

Id.  Inexplicably, plaintiffs submitted the exact same answer to Interrogatory No. 8 following this

Court's Order that the answer was insufficient.  As a result of plaintiffs' violation of this Court's

Order relating to Interrogatory No. 8, plaintiffs will only be allowed to introduce the two names

provided as the only two similarly situated white farmers whose application for a farm operating

loan was treated more favorably than plaintiffs' application.

Interrogatory Nos. 12 through 15 likewise violate this Court's Order with equally glaring

offense.  Interrogatory No. 12 asks plaintiffs to describe any treatment by a health care provider

in connection with the allegations of the complaint.  Following the plaintiffs' earlier answer, this

Court explicitly stated that providing a "psychological report concerning plaintiffs' mental health is not responsive to an interrogatory asking whether plaintiffs received treatment from a health care provider." Id. In response to this Court's Order, however, plaintiffs provided the same answer to defendants.[8] For violation of this Court's Order relating to Interrogatory No. 12, plaintiffs will not be allowed to present anything but the report of Dr. Waymon Hinson as evidence of any treatment for plaintiffs.

Interrogatory No. 13 seeks the names of potential lay and expert witnesses, and again plaintiffs repeat the answer the Court previously found inadequate: "Will supplement." Interrogatory No. 13; Answer No. 13. For violation of this Court's Order relating to Interrogatory No. 13, plaintiffs must provide a list of all potential lay and expert witnesses known at this point in this case within ten days of this memorandum opinion or forego the introduction of witnesses at trial. Despite the Court's admonition that providing an incorrect reference to the Code of Federal Regulations in no way constitutes a satisfactory response to an interrogatory, plaintiffs again duplicate the inadequate answer to Interrogatory No. 14 in their supplemented answers in stating simply "7 CFR." For violation of this Court's Order relating to Interrogatory No. 14, plaintiffs will not be allowed to introduce any additional evidence supporting the contention that, by law, all farm operating loans are extended to first time and socially disadvantaged farmers, including black farmers.

Finally, despite repeated statements by this Court that reference to a "file" is an inadequate response to a discovery request, plaintiffs reproduce the unsatisfactory answer to

---

[8] As this Memorandum Opinion later addresses, the report referenced in plaintiffs' response as an "answer" was never even produced to defendants, despite plaintiffs' instruction to defendants to "see production for complete report."

Interrogatory No. 15 verbatim by saying simply that "the Plaintiff's file was used" in responding to interrogatories or otherwise relating to the plaintiffs' allegations or claims of damages. Interrogatory No. 15; Answer No. 15.  For violation of this Court's Order relating to Interrogatory No. 15, plaintiffs must limit document production relating to damages claims with respect to their 2003 farm operating loan application to those used in responding to Interrogatory No. 10, and furthermore, those documents must be identified and produced to defendants within ten days of this memorandum opinion.

This Court need not waste additional judicial resources in repeating its reasoning for finding the plaintiffs' responses to defendants' reasonable, well-articulated, and narrow discovery requests wholly inadequate.  It would be perverse to allow the insufficient answers of plaintiffs to remain the sole responses to the government's requests, as doing so would punish the government by preventing it from acquiring the information necessary to mount a defense to plaintiffs' claims, the bases of which remain unclear or unknown to the government.  It would be equally perverse to allow plaintiffs to benefit from blatant disregard of this Court's previous order on the insufficiency of their interrogatory responses by allowing a third opportunity to comply.  Therefore, as to the amended supplemental interrogatory responses that remain deficient, plaintiffs are ordered to provide full responses to defendants' interrogatories as outlined above within ten days of this memorandum opinion.  Failure to do so jeopardizes plaintiffs' ability to proceed with their claims.  As to the interrogatory responses to merely duplicate the answers previously held insufficient by the Court, plaintiffs are sanctioned as described by this memorandum opinion.

c.     Plaintiffs Have Committed Additional Violations.

This Court's previous Memorandum Opinion and Order required plaintiffs to provide both complete responses to defendants' interrogatories and to defendants' requests for production of documents by May 11, 2006.  On May 12, 2006, defendants represented to the Court that, in addition to failing to adequately respond to interrogatories,  plaintiffs had yet to produce any documents.  Defs. Mem. at 1.  At the status hearing held on November 17, 2006, a full *eight months* following the court-imposed deadline to produce documents, plaintiffs still had not done so, nor has plaintiff filed a single request with the Court to extend the deadline due to any exigent circumstances.  This constitutes yet another flagrant refusal by plaintiffs to conduct themselves in accordance with the Court's orders and rules of procedure.  See FED. R. CIV. P. 37(b).

Finally, plaintiffs continue to fail to comply with the fundamental requirements of form set forth in the Local and Federal Rules of Civil Procedure.  FED. R. CIV. P. 26(g).  Plaintiffs' initial answers were not signed by either plaintiffs or counsel; plaintiffs' initial revised answers that were subject of the Court's April 27, 2006 Order were not signed by counsel; and now, for a third time following explicit instruction of this Court to comply with Rule 26(g), plaintiffs' supplemented answers in May 2006 are likewise submitted without proper certification.  Defs. Mem. to Compel at 8.  As this Court previously explained and as the Federal Rules of Civil Procedure require, each discovery response must be signed by counsel.  See FED. R. CIV. P. 26(g)(2).  A failure to sign an interrogatory response may result in the court striking it "unless it is signed promptly after the omission is called to the attention of the party making the request, response, or objection . . . ."  FED. R. CIV. P. 26(g)(2).  This Court has already called the omission to the attention of plaintiffs' counsel one time.  See Williams v. Veneman, 235 F.R.D. at 124.

Plaintiffs are required to provide adequate certification to all discovery requests in compliance with this memorandum opinion within ten days or all discovery requests without proper certification will be stricken.

    4.    *Payment of Defendant's Attorneys' Fees Is Appropriate*

Plaintiffs' counsel should pay attorneys' fees for defendants in bringing their second motion to compel for multiple reasons.  If a party fails to obey a discovery order, Rule 37(b) *requires* the court to assess against that party, "or the attorney advising him or both," the reasonable expenses of the party seeking discovery which were caused by the failure to obey. Monroe, 135 F.R.D. at 8.   The court must do so unless the failure was substantially justified or the award would otherwise be unjust.  Id.  Plaintiffs clearly failed to follow this Court's previous Order relating to discovery, and plaintiffs' counsel has offered no reason why he responded to interrogatories with the same responses that the Court previously held inadequate.  For this reason alone, plaintiffs' counsel should pay costs for defendants bringing the second motion to compel.

Furthermore, the Federal Rules also allow appropriate sanctions in the event a motion to compel is granted.  FED. R. CIV. P. 37(a).  The responses to defendants' interrogatories and document production requests were only the beginning of discovery, and defendants are entitled to have adequate answers to their interrogatories and the necessary documents in order to thoroughly conduct subsequent discovery, such as designating expert witnesses and taking depositions.  Moreover, plaintiffs' counsel never certified the discovery responses as required by Rule 26(g).

As demonstrated by the preceding discussion, defendants' Second Motion to Compel was

the direct result of plaintiffs' counsel's total disregard of his obligations under the Local and

Federal Rules of Civil Procedure and of the orders of this Court.  We have already come down

this path.  Accordingly, plaintiffs' counsel is ordered to pay the expenses, including reasonable

attorneys' fees, incurred by defendants in bringing this second motion to compel.  Defendants are

ordered to file an affidavit with the Court within ten days of this memorandum opinion detailing

attorneys' fees and other expenses incurred by defendants in filing their Second Motion to

Compel.

> ### B.     Defendants' Motion for an Independent Medical Examination of Plaintiffs, and for an Extension of Certain Deadlines

Defendants move for an order to require plaintiffs to submit to independent medical

examinations pursuant to Rule 35 of the Federal Rules of Civil Procedure.  <u>Memorandum in</u>

<u>Support of Defendant's Motion for an Independent Medical Examination of Plaintiffs, and for an</u>

<u>Extension of Certain Deadlines</u> ("Defs. Mem. IME") at 1.  Plaintiffs do not oppose submitting

themselves to an independent medical examination, rendering the motion for an order to do so

moot.  <u>Plaintiffs' Response to Defendants' Motion for an Independent Medical Examination of</u>

<u>Plaintiffs, and Extension of Certain Deadlines</u> ("Pls. Resp. IME") at 1.  As expressed before the

Court at the November status hearing, the remaining issues to consider include where the exam

will take place, whether in Washington, D.C., or Texas, and the deadlines for conducting of the

medical examination and the filing of the expert's report.

Defendants have retained Dr. Wayne Blackmon, a board-certified psychiatrist, to conduct

the examination of plaintiffs.  Defs. Mem. IME at 7.  As stated orally in court, Dr. Blackmon's

practice is based in Washington, D.C.  Defendants argue that, because plaintiffs elected to file

suit in this jurisdiction, it is not unreasonable for plaintiffs to submit to independent medical examinations in Washington, D.C.

In response, defendants agree the filing of suit in Washington, D.C., under typical circumstances, would lend itself to conducting the independent medical examination in Washington, D.C. But, defendants argue, these are not typical circumstances. Plaintiff Laverne Williams has suffered from deteriorating health, limiting her ability to travel. Pls. Resp. IME at 1-2. The government has demonstrated ability to travel to Texas in order to conduct depositions in this case, and thus defendants argue it is not unreasonable to expect the government to also travel to Texas for the purpose of conducting medical examinations. Defendants argue the disruption to Mr. Blackmon's practice and the added expense required for his travel to Texas necessitate conducting the examinations in Washington.

The Court does not wish to subject defendants to undue expenses when plaintiffs elected to file suit in Washington. Nor does the Court wish to subject plaintiffs to undue hardship in pursuit of their claims if they are sick or infirm. Accordingly, defendants are ordered to provide plaintiffs with three possible dates for medical examinations of plaintiffs to be conducted in conjunction with depositions to take place in Texas. To accommodate the defendants' added expense of conducting the independent medical examinations in Texas, plaintiffs are ordered to pay the reasonable expenses of the defense expert's travel to Texas for the purpose of conducting the examinations, or the government may choose a locally available expert to conduct the examination in Texas. If, however, plaintiffs cannot agree to any one of the dates proposed by defendants, plaintiffs must provide a date at which they are able to appear in Washington, D.C., for the purpose of submitting to independent medical examinations. Whether conducted in

Texas or Washington, parties are ordered to complete the independent medical examinations no later than February 16, 2007.

### C.    Plaintiffs' Motion to Amend Scheduling Order

Discovery deadlines have been extended twice in this case, with the current deadline for all discovery set as September 20, 2006, which has clearly expired.  Plaintiffs move to amend the scheduling order by extending all deadlines ninety days, which would lead to a new discovery deadline of December 20, 2006.  As this memorandum opinion suggests, more time is necessary to complete the discovery at issue in this case.  Moreover, neither party has filed the Rule 26(a) statement, the deadlines for which have long since passed.

Therefore, plaintiffs' Motion to Amend is granted in part and denied in part, with new discovery deadlines as follows.  All discovery is to be completed by March 1, 2007.  Plaintiffs' Rule 26(a)(2)(B) statement is due no later than January 12, 2007.  Defendants' Rule 26(a)(2)(B) statement is due no later than February 2, 2007.  As previously stated, all independent medical examinations must be conducted no later than February 16, 2007.  Within ten days of this memorandum opinion, parties are to submit to the Court a complete joint discovery plan, including the precise dates and locations for depositions, independent medical examinations, and the exchange of outstanding written discovery.  Parties are ordered to review the Scheduling and Procedures Order issued by Judge Kollar-Kotelly in this case on July 5, 2005. Parties are further instructed to contact the district judge's chambers to set a status hearing following the close of discovery.  No additional extensions of time to conduct discovery will be granted.

### D.    Plaintiffs' Emergency Motion to Quash Depositions

With the new discovery schedule and the agreement by both parties of the need to

conduct additional depositions, plaintiffs' Emergency Motion to Quash is denied as moot.

Parties are to continue with discovery according to the new deadlines outlined in this

memorandum opinion and order and according to the Federal Rules of Civil Procedure.

## IV.    CONCLUSION

For the forgoing reasons, defendants' Second Motion to Compel will be granted.

Plaintiffs are instructed to provide complete answers to defendants' interrogatories and complete

responses to defendants' requests for production of documents within ten days from the date of

this memorandum opinion.   Defendants's Motion for IME will be granted in part and denied in

part as moot.  Plaintiffs' Motion to Amend is granted in part and denied in part, with parties to

adhere to the new discovery deadlines detailed in this memorandum opinion.  Plaintiffs' Motion

to Quash is denied as moot.  Plaintiffs' counsel is ordered to pay defendants' attorneys' fees for

the first Motion to Compel in the amount of $2,186.54, as well as the fees for the current Motion

to Compel.  An order accompanies this memorandum opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: